## MARK PEASE *versus* PELEG BENSON, JR. *& al.*

Under the provisions of st. 1821, c. 39, the foreclosure of a mortgage cannot be made "by the consent in writing of the mortgagor" without an actual entry by the mortgagee, or those claiming under him, into possession for condition broken.

The foreclosure of a mortgage cannot be caused by the written admission of the parties, in a manner not authorized by the statute.

If an assignee purchase the mortgage by the payment of a sum less than the amount actually due, still the mortgagor or his assignee will not be entitled to redeem without payment of the full amount due upon the mortgage.

It was the design of the Rev. St. c. 125, § 16, to enable the mortgagor, in certain cases, to maintain a bill in equity to redeem a mortgage without the performance, or tender of performance, of the condition; but not to authorize him to recover costs, unless he had been prevented from doing it by some act of the mortgagee, or his assignee.

The mere denial of the right of the mortgagor to redeem will not prevent his tendering performance, and will not, of itself, authorize the awarding of costs to the complainant.

The object of the statute being to afford a party, seeking to redeem, information of the exact amount claimed to be due upon the mortgage, any failure to afford it within a reasonable time after request must be regarded, in the sense of the statute, as an unreasonable neglect or refusal.

BILL in equity to redeem a mortgage. The case was heard upon bill, answer and proof. The opinion of the Court gives a sufficient statement of facts.

*S. May*, in his argument for the plaintiff, advances these legal positions : —

If the complainant would prevail it is incumbent on him to satisfy the Court of two things : —

1st. That he is *rectus in curia* and entitled to this bill.

2d. That he has a right to redeem the premises, or in other words, that the mortgage held by the respondents has not been foreclosed ; and

3d. If he would recover his costs, he must show that the respondents, upon request, have *unreasonably* refused to render a true account of the sum due upon the mortgage held by them, or in some way by their default have prevented him from performing or tendering performance of the condition before suit.

In the remarks I have to submit, I propose to maintain the affirmative of each of these three propositions.

And first, is the complainant rightly in Court with this bill?

By § 16 of c. 125, Rev. Stat. it is provided that a bill in equity like this may be maintained without a tender, if the complainant shall in his bill "offer to pay such sum as shall be found to be equitably due," provided the mortgagee or person claiming under him shall have refused or neglected, on request, to render a true account of the sum due before the commencement of the suit. This section, as it speaks of rents and profits and money expended in repairs and improvements, may be said to refer only to cases where the mortgagee or his assignee have the actual possession; but if this be so, still it is provided in § 17, if the money *have been paid or tendered,* such bill may be maintained although the mortgagee or his assignee shall never have had the actual possession of the premises for breach of the condition, or " *in such case,*" refering to the want of possession as aforesaid, it is further provided in the 18th § of the same chapter that the bill may be maintained as in the 16th § without having made a tender.

That the words "or in such case," in this section refer only to cases where the mortgagee or his assignee has never had actual possession for breach of the condition, is evident, because a construction which should refer them to cases where the money due on the mortgage had been paid or tendered to the mortgagee or his assignee, would be absurd, for it would make the Legislature say nothing more than that whenever the money due had been paid or tendered, then a mortgagor or person claiming under him, may have his bill without having made a tender.

Taking those three sections together it appears plain: —

1st. That the owner of an equity of redemption may maintain his bill after a breach of the condition, if the mortgage *has been paid,* and this whether the mortgagee or his assignee be in possession of the premises or not. 2. That he may maintain his bill in all cases where the money due on the mort-

gage has been tendered before suit; and 3d. He may main-
tain his bill against the mortgagee or his assignee, whether in
or out of actual possession, in all cases, where the money due
has not been tendered, provided he shall offer in his bill "to
pay such sum as shall be found to be equitably due, and if
the respondents shall have refused or neglected, on request, to
render a true account of the sum due before suit brought."

The fact then of a request, and a refusal and neglect to ren-
der a true account, as is alleged in the bill, is not denied. If
such refusal and neglect were reasonable it might affect the
question of costs, but whether reasonable or unreasonable can
in no way affect the question of jurisdiction in this case. *Wil-
lard* v. *Fiske*, 2 Pick. 540; *Cushing* v. *Ayer*, 25 Maine R.
383.

I am aware that G. A. Benson, in his answer, says he made
no reply to the written request, because he had before stated
the extent of the claim covered and secured by the mortgage,
and that it did not embrace demand for repairs, and that they
had received no rents and profits from said real estate. It
will be perceived at once, that no such information was com-
municated at either of the interviews between the parties
mentioned in the answer.

I go further and contend that the account rendered should
be in writing, and contain the exact amount claimed or the
items from which the exact amount can be ascertained, that
the account rendered should be so stated in the answer or
otherwise proved as to enable the Court to say that no more
was claimed than was due. *Allen* v. *Clark*, 17 Pick. 47.

If more is claimed than is due, then, in the language of C.
J. WHITMAN, in the case of *Cushing & Ayer*, before cited,
"it is not a true account."

Again we contend, that if the paper of Oct. 21, 1837, was
an entry and an obtaining of the actual possession of the
premises within the meaning of the stat. of 1821, c. 39, §
1, (which was the only statute in force in this State when said
paper was given) then the respondents are accountable for
the rents and profits, which by due diligence, they might have

received and these would have much more than paid off the mortgage before it could have been foreclosed, and so there was no rendering of a true account even if it had been done in answer to the written request.

If the rents and profits are equal to the sum due on the mortgage, the mortgage must be regarded as paid, and the complainant may, under the 17th section of the statute, maintain his bill without proof of any tender. *Tirrell* v. *Merrill*, 17 Mass. R. 117. That under the circumstances of this case the respondents are bound to account for the rents and profits, at least after the assignment of the mortgage to them, I cite Powell on Mort. (1st American edition,) 1030, as directly in point, also *Newhall & al.* v. *Wright*, 3 Mass. R. 154.

Nor is this an unreasonable rule. If the mortgagor had occupied himself, and had not assigned his interest in the estate, he would be entitled to no deduction on account of the rents and profits, because he had got in the actual enjoyment of the rents and profits all which he was entitled to receive. But when the mortgagor has parted with his right to redeem and the mortgagee or his assignee takes the possession, so that the mortgagor becomes his tenant, holding under him, he must be held to account for the rents and profits to the assignee of the mortgagor, for the good reason that such rents and profits belong to the assignee and not to the mortgagor. When the mortgagor has conveyed his right, then the mortgagee sustains the same relation to the assignee as he did before to the mortgagor, and his duties and liabilities to the assignee must be the same as if the mortgagor had never owned the estate. If it be said that this is hard for the mortgagee, because he may not even know of the assignment, our answer is, that if the deed of assignment is upon record he is bound to know it, and is estopped to deny his knowledge of it. *Clark* v. *Jenkins*, 5 Pick. 280 ; *Mills* v. *Comstock*, 5 Johns. Ch. R. 214; *Cushing* v. *Ayer*, 25 Maine R. 383.

But if the respondents had before the written request, rendered a true account, the complainant had the right, even a few hours after, to make a new request, and to inform them he

was ready to redeem; and they were then bound to furnish a true account, as it existed at that time, either by stating that the one before rendered remained correct, or by furnishing the items composing the amount due.

We are brought then to the second question in this case, the question of merits. Has the complainant a right to redeem ?

We contend that he has : —

1. Because there has been no entry and obtaining of the possession for condition broken, according to the provisions of any of the statutes in this State.

It is now settled that an entry to foreclose, must be in accordance with one of the modes provided by the statute. *Ireland* v. *Abbott*, 24 Maine R. 155.

It will not be pretended in this case that the entry relied on was in accordance with any of the provisions of the Revised Statutes, c. 125, sect. 3 and 5, or the stat. of 1838, c. 333, sects. 1 and 2, or the statute of 1839, c. 372.

The entry relied on, must have been under the statute of 1821, c. 39, sect. 1, as that was the only statute in force on the 21st of Oct. 1837, when the writing set forth in the respondent's answer was given. By that statute the mortgagee or those claiming under him, must have entered and obtained the *actual* possession of the premises, for condition broken, before the mortgage can be foreclosed. This may be done in either of three modes, viz: — 1. By process of law. 2. By the consent in writing of the mortgagor or those claiming under him, or 3. By the mortgagee's taking peaceable and open possession of the premises mortgaged, in the presence of two witnesses. But the possession obtained in either mode must be actual possession.

This is not an entry by process of law, nor in the presence of two witnesses, nor is it by consent in writing by the mortgagor or those claiming under him, within the meaning of the statute. The statute means, that the consent shall be given by the person interested, by the mortgagor if he is the owner of the right to redeem, and if he is not the owner, then by his

assignee, or the person holding the right to redeem, and who is to be affected by the act. This is reasonable, but if the mortgagor after he has conveyed his right, can bind his assignee without his knowledge or consent, great injustice might be done. Such a construction of the statute would be extraordinary indeed. The mortgagor after he has assigned his interest, can no more consent to an entry, than the mortgagee after he has sold his interest can enter for condition broken. The language of the statute gives the mortgagee and those claiming under him the right to enter for condition broken, in the same manner as it allows such entry to be made by consent in writing of the mortgagor or those claiming under him. It has been settled by this Court, that an entry by the mortgagee after he has parted with his interest in the mortgage, is of no avail to foreclose a mortgage, but such entry must be made by the person holding the mortgage at the time the entry is made, and for the very same reasons the holder of an equity at the time when consent in writing to enter and hold for condition broken is given, can alone give such consent, whether such holder be the mortgagor or his assignee. *Call* v. *Leisner*, 23 Maine R. 25. So it has been settled that a mortgagor after he has assigned, cannot redeem, his assignee alone having the right. *True* v. *Haley*, 24 Maine R. 297.

But whatever might have been the effect of such a paper as between the mortgagor and the respondents, it clearly can have no effect to bar the complainant of his right to redeem. Such an entry, even if actual possession had been obtained with the written consent of the mortgagor, and even if he had the right to give such consent, certainly cannot bar a then existing second mortgagee, of his right to redeem, unless he had at least notice of such entry. *Gibson* v. *Crehore*, 5 Pick. 146; *Boyd* v. *Shaw*, 14 Maine R. 58.

Under the Massachusetts statutes, notice that the mortgagee was holding for condition broken, might be inferred from actual and continued open possession after a breach of the condition, and such possession might be effectual to foreclose the mortgage. But our statutes exclude this mode. Vide *Ire-*

*land & Abbott,* 24 Maine R. 155.    Also a note in the 14th of
Maine Reports, 65, at the end of the case of *Boyd & Shaw.*
In the case of *Thayer & al.* v. *Smith,* 17 Mass. R. 429, it
was decided that nothing short of *actual notice* to the mortga-
gor will supply the want of *continued* possession.

The object of the statute in regard to costs, is to protect a
mortgagee who is without fault, one who is willing to receive
his money and discharge his claim without the filing of a bill.
But in all cases where the mortgagor or his assignee is under
the necessity of resorting to a bill to obtain his rights, through
the fault of the mortgagee or his assignee, costs should be
allowed.    This is a reasonable construction of the statute.    In
all cases then, where the mortgagee or his assignee claims an
indefeasible title in the premises, or denies the plaintiff's right,
or evades his demand, if the plaintiff is entitled to prevail,
costs should follow as a part of the decree.    In such a case
the claim of title, the denial of the plaintiff's right, and the
evasion of his demand are all wrong and unlawful; and in the
eye of the law, that is unreasonable which is unlawful.

If a defendant would avoid costs he should concede the
plaintiff's right to redeem, and it should appear from the facts,
that he had placed no obstacle or hindrance in the way of it,
and that in such case he was willing to take the amount due
upon the mortgage and discharge his claim.    In the case be-
fore the Court, unless the facts are greatly misunderstood, the
reverse of all this fully appears, and if so, this is a "preventing
of the plaintiff from performing or tendering performance of
the condition before the commencement of the suit," within
the meaning of the statute.

*Emmons,* for the defendants, in his argument, took the fol-
lowing legal views of the case.

The complainant, a junior mortgagee, seeks of the Court by
his bill, to be allowed to redeem the premises therein described
of the defendants, who are the lawful assignees of Ira T.
Thurston, an elder and first mortgagee of one Ezekiel Holmes.
The rights and titles of both parties, by virtue of the respec-
tive instruments under which they severally claim, are valid as

against Holmes. The great question in the case is, whether the acts and proceedings of Thurston and the defendants, who possess and enjoy all the rights, privileges and benefits that he had and those the defendants have acquired since, have in equity deprived the complainant of the right which he seeks to enforce in this process. To the discussion of this question and that of costs, will the observations which I beg to submit to the Court in this case, be principally confined. The counsel for the complainant has distributed his discussion into three general points, first, that the complainant is *rectus in curia* — second, the complainant's right to redeem, — third, the question of costs. I could not, after the laborious effort of the learned counsel, to get "*rectus in curia*", have the hardihood, if I possessed the spirit of a judicial gladiator, to attempt to remove his "*stat in curia*;" but will cheerfully submit to the Court whether they will permit his continuance. I will therefore proceed to consider the second point in the argument.

It appears that Holmes, on the 17th of August, 1835, conveys the premises described in complainant's bill, in mortgage to Ira Thurston; and on the 9th of February, 1836, makes a second mortgage thereof to the complainant, apprising him of the existence of Thurston's mortgage, which seems not then to have been recorded. The respective rights of the different claimants as thus indicated, remained unchanged, so far as any acts of either appear to have taken place, till October 21, 1837, when Holmes gave Thurston a certain paper, expressed and written as follows: — viz. "I hereby give possession to the Rev. Ira Thurston, of a certain lot of land situate in Winthrop village, bounded as follows; north by land owned by Samuel Morrill, jr. east by Morton street, south and west by the burying ground, together with the buildings thereon; said lot is the same which I purchased of said Thurston and is secured to him by a mortgage." No question can be made that the premises mentioned in the above recited paper, are identical with those drawn into the claims of the respective parties. The value and effect of this paper, must be determined by the laws

of the State, in reference to the subject at the time of its creation. That law is to be found in the 39th chap. of the laws of 1821, § 1. The first part of the section mentions and prescribes what a mortgagor's rights are in regard to redemption, when a mortgagee has taken measures to foreclose his mortgage ; and in the latter part of the section, under the proviso, it is said that the entry above described shall be by process of law, *or by the consent in writing of the mortgagor, or those claiming under him, &c.*

The paper given by Holmes, the mortgagor, to Thurston, above quoted, comes, as the defendants believe, within the second mode of procedure to be taken by a mortgagee to foreclose his mortgage as prescribed by the statute aforesaid. Holmes, at the time of making and delivering this paper, was in possession of the premises. The consent in writing to be given to the mortgagee, contemplated by the statute, is to be given by the person in possession either as mortgagor or assignee. Holmes then had a right to give the paper. Does it substantially contain all the statute requires, the paper denominated " consent in writing", should contain to render it effectual ? No interpreter or expositor by law authorized to make judicial adjudication of the meaning of the clause in question, would assert that the instrument contemplated therein, would require that the writing should be in the identical language of the statute ; but simply any writing given and received by the proper persons which should, by a fair and just interpretation, import a consent on the part of the giver of the paper, that the person to whom given might enter and have possession of the premises to which the paper related.

The law does not demand that the paper should state the object for which the consent is given. The object may be inferred from concurring and attendant circumstances, and the declaration of both parties, so far as affects them at least. What is the language of the paper brought into consideration in this case ? It is, " I hereby give possession" to Rev. Ira Thurston, then describes the premises, states that they are the same which I purchased of said Thurston, and is secured to

Pease v. Benson.

him by a mortgage thereon.  The interpretation of this language must be, "I the mortgager, hereby give you, the mortgagee, possession of the premises described."  The term give implies a giver and also a receiver.  The parties then are made to say, I, the mortgager, give, and I, the mortgagee, receive possession of the premises.  How can this be done, except by an *actual entry* of the mortgagee ?  Possession cannot be given nor received by manual tradition.  The very language of the paper, necessarily implies and demands an actual entry into the premises, and obtaining possession by consent of the signer, the mortgager.  To prevent confusion and unjust application of the argument, it is necessary to remark, that there is a palpable distinction between an actual entry, and obtaining possession, and an actual entry, and a continuance of the possesion when obtained.

The statute of 1821, c. 39, § 1, says nothing of continuing to hold possession after it is obtained in order that a foreclosure may be effected.  It does indeed speak of what may be done, in case the possession may have been continued, but nowhere insists upon continuance as indispensably necessary, to work a foreclosure.  Now what could be the object of Holmes in giving and Thurston in receiving such a paper ?  The Court will not suspect, that two professional men, should gravely set down, the one to make and the other to receive such a paper, as amusement or pastime.  They will presume that both had some distinct and important object.  What conceivable object could they have had, but to fix the time within which Holmes' right of redemption under his mortgage to Thurston should expire.  The case finds that at the time of the assignment of the note and mortgage by Thurston to the defendants, in 1839, both Holmes and Thurston declared to the defendants that such was the object.  Neither Holmes nor Thurston can ever be permitted to testify to any fact which would be inconsistent, with the statements which they made to defendants at the time of the assignment, which operated upon defendants as a motive to the transaction.  That would be a fraud which neither equity nor law would sanc-

tion. Neither can Holmes nor Thurston do or say any thing by which the right and title they were the instruments of conveying to the defendants, after said conveyance, can be impeached so far as respects them at least, if not every one else. Suppose Thurston had not assigned his note and mortgage to the defendants, and three years had elapsed after the date of the paper in question, and Holmes had not paid his notes, and Thurston had claimed to hold the premises by an indefeasible title, and Holmes had brought a bill in equity to redeem, having tendered to Thurston what was due him on his notes; and Thurston had offered the paper in question to show that Holmes' title or right of redemption was gone. Would the Court allow Holmes to say that nothing was meant by this paper and what it imported by its terms was not done? Surely he must be bound by it, and if it stated enough to meet the requirements of the statute he could not sustain his bill. We have endeavored to show that the paper does contain enough, by a fair and just interpretation, to satisfy the exigency of the law in this respect. The conclusion to which this argument conducts us is, that in reference to Holmes and Thurston their rights under the mortgage are gone forever.

It is time to turn to the consideration of the question of costs. If the Court should say that the defendants are wrong in the construction of law in regard to the foreclosure of the mortgage, and the complainant has a right to redeem in this case, we would respectfully contend that he should not have his costs. No one but the complainant's counsel, can read the answer of G. A. Benson, without seeing at once, that he supposed the right of redemption had gone from the complainant by reason of the foreclosure of the Thurston mortgage; that he had a large demand against Holmes, who had procured a discharge in bankruptcy, for which he never could obtain a brass farthing; no, not even thanks nor gratitude for many favors, unless he might, as a man of honor and honesty, hold the property included in Thurston's mortgage, legally forfeited to him, in consequence of the non-payment of what was due

him on account of the Thurston note, and the foreclosure by virtue of the paper and what it implied was done by Holmes and Thurston; that he never could have thought of holding all the mortgaged property, if he legally could, to pay the paltry sum advanced, if he had not had other demands against Holmes, which he must lose.    Supposing he had the legal right, he proposed to the complainant to leave it to men to say, whether he should have from the mortgaged property any thing more than what he paid and the interest, or some thing besides for the payment of his other demands, which, notwithstanding poor Holmes' account, are several hundred dollars, and the complainant have the balance.

And when the said Benson, on pages 12 and 13 of the copies of the case, in his answer, says, "he knows, that at said time and in said interview he did state to said complainant, that said Holmes was indebted to said Peleg Benson, Jr. and this defendant in a large sum, aside from and in addition to the said note of the said Holmes to said Thurston paid as aforesaid, by this defendant, for a large part of which sum so due, and owing from said Holmes, to said Peleg Benson, Jr. and this defendant, had no other security, than what might grow out of the deed of mortgage from said Holmes to said Thurston, and the assignment thereof and the land therein described by the said Thurston to the said Peleg Benson, Jr. and this defendant, and expressed the opinion to the said complainant, that it would be right and just, that Peleg Benson, Jr. and this defendant should at least participate in the property secured by the mortgage aforesaid, to pay the demand against said Holmes, for which they had no other security," what could be his meaning, but that as he had a legal right to the property, for which he had paid but a small sum, it would be right and just, to take from said property a part payment of other demands against Holmes, for which he had no security, but what grew out of this foreclosure, and divide with complainant the loss, both must sustain from Holmes.    Benson and the complainant, and every body knew, that the mortgagee could not secure more than what was mentioned in

the condition. Nothing was in the condition of the Thurston mortgage but Holmes' notes to him. And the security which was to grow out of that mortgage to Benson, *was planted in the supposed foreclosure.* Before Benson uses the language quoted in page 12th, he says he feels a confident persuasion, and it is his full belief, that he made known to said complainant the extent of the claim of Peleg Benson, Jr. and this defendant, as *covered and secured by said mortgage, &c.* making thus a distinction between that claim, and the other demands. If this idea is not clearly conveyed in the answer, it is my fault, not Benson's, because I drew the answer from his statement and sent it to Winthrop for his examination, signature and oath. He never pretended to any person, I *presume,* as he must have known better, he certainly never did to me, that he could get any part of his pay for demands he held against Holmes, not included in the condition of Thurston's mortgage, except there was a foreclosure, and then he was willing persons should be selected to say what division of that property should be made between him and the complainant, not wishing to retain the whole, to the exclusion of the complainant, though he supposed he had the legal right. Now suppose the defendant wrong in his judgment of his rights, and the complainant has a right of redemption, he was bound to pay or tender what was due to the Bensons before he could maintain his bill. Something was due upon the assumption of the complainant, that there has been no foreclosure. It is said, that the complainant did not know what was due and could not ascertain, and therefore it was no fault of his, that payment or tender of payment was not made. We deny this altogether. What says the answer? See pages 14 and 15 of the copies. On the 9th of July, 1846, the very day the letter of request was written by the learned counsel, the complainant called upon G. A. Benson. In the interview between the complainant and G. A. Benson, the latter in his answer says, the former inquired how much was due on the Thurston note? He, (Benson,) produced the note, having that day made a calculation of what was due on it, knowing the complainant was then in

Winthrop, and expecting the complainant would call upon him, and told said complainant how much was due thereon, and shew the note to him; gave the note to the complainant and furnished means to take a copy of the note and indorsements, and after the complainant had taken minutes of the notes and indorsements, Benson then said, he supposed *the object of the complainant was to ascertain the rights of the parties*, and then produced the writing of Oct. 21, 1837, which he copied, then the mortgage deed and the assignment. Now it is to be remarked, that if said Benson had pretended that he had other claims, than what were exhibited in the papers presented to the complainant, which were necessary to ascertain the rights of the parties, would he not have produced them and stated them, when he told the complainant he supposed that was his object at the time? The exhibit was tantamount to saying, sir, you have before you all which can show what I claim as matter of law, and you can see what are your rights and mine. But when in page 15, Benson in his answer gives the reason for not making a reply to the notice, he says he had previously made known to said complainant, the extent of the claim, *covered and secured* by said mortgage, (precisely the language used before in contra-distinction to the additional demands, and in exclusion of them, for which he had no security of Holmes, except what *grew* out of the foreclosure,) and that it did not embrace demand for repairs and the defendants received no rents and profits from said real estate. This Benson swears to, and there is no opposing evidence. But the learned counsel with an air and tone of triumph, demands, I ask *when* and under what circumstances was this knowledge given?

The counsel then proceeds to answer, *it was not* given at either of the interviews between the plaintiff and G. A. Benson, which are mentioned in said Benson's answer, because at these, not one word is said about repairs or rents and profits. Pray how does the learned counsel know? Was he present? Does said Benson say he stated in his answer all which was said by the parties at these interviews? Was it necessary to

state in his answer, before he came to give the reason for not replying to the notice, that he had spoken of repairs and rents and profits, and denied he had any claim for the one, or had received the others, and then when he came to assign the reason for not replying to the notice, to say he did not do so because he had made known to the complainant the extent of his claim, as before stated in his narrative of what was said, at a previous interview ?   Might he not adopt this mode in his answer, without subjecting himself to the imputation of falsehood ?   As no time is given in the answer, says the learned counsel, the Court cannot know when the information was communicated, and therefore must be unable to tell whether the demand was *the same when* the information was communicated and *when* the request was made in writing.   This certainly is very extraordinary argument, when on the very day of the request, Benson undertook to make the complainant acquainted with the facts, so he might be able to ascertain his rights and those of the defendants.   I trust the Court have some common sense if the complainant and learned counsel have not.   There can be no doubt, that in the interval between the first and second calling of complainant upon defendant, on the 9th of July, 1846, the complainant was at the office of his solicitor, and carried and shew him his copies and minutes, and must have been informed, what Benson could claim and what not, by his learned counsel, and he might have tendered him the balance due, on the Thurston note, and if the Bensons had refused it, he might have brought his bill.   There must be something that we cannot see, in this formal notice to a neighbor a few rods from the learned counsel's office, in all probability, almost every day in the week, except Sunday.   At any rate, Benson swears he informed the complainant of the extent of his claim.   And will the Court presume, *it was not*, when Benson says he presumed the object of the complainant was to ascertain the rights of the parties, a few hours before the formal written application to a near neighbor, who might be seen almost every hour, in every week by the solicitor or his student or partner.   The learned counsel inquires if there were any

difficulty in the way of replying to the notice ?   I presume the learned counsel would not expect me to answer that inquiry. He knows whether the communication between him and the defendant is easy or difficult.   The learned counsel for complainant says, that what Benson says in reference to the notice, and the reason for not replying to it, is not evidence, because it is not responsive to the bill.   Pray what is ?   I am sure I cannot tell, if that is not.

He further says, the true reason, for not replying to the notice, was because the Bensons wanted to stretch their mortgage to get other demands than what it rightfully embraced; but Dr. Holmes dissipates the claim and shows its existence was a pretence.   This Dr. Holmes, a pretty witness indeed to dissipate pretences, who after Benson had signed a bond for him to keep him out of jail, and had a bill of sale of the Doctor's library and permitted him to enjoy it undisturbed, can cooly give a warranty deed of land to Clark, which he had before conveyed to the Bensons, because he supposed the Benson deed was not recorded.   Better suffer the Doctor to lie quietly on the bed of his own " pretences," and not torture him into activity to dissipate the pretences of the Bensons. Better send the Doctor to the Rev. Ira Thurston.   We say that the defendants informed the complainant of what was due to them by virtue of their assignment of the Thurston mortgage, and he ought to have tendered the amount which he found due, by means furnished by defendants, and if he had tendered too much, he could have received the excess back, if received by defendants, and the defendants presented no hindrance or obstruction, and he might then have brought his bill and if the Court had determined he had a right to redeem, they would have allowed him his costs as they ought.   But here was no refusal, to let the complainant know all the facts, no evasion, no skulking, no duplicity on the part of the defendants, and if the complainant be a sensible man he must have known, as the history of the case shows, just what the defendants did claim, and if he were right in his law, he should have tendered the small sum due the Bensons, and if they had not

been willing to accept it, then he would have put them legally in the wrong and the Court would have given him his rights and his costs. But now he ought not to have costs, if he should be thought to have a right to redeem.

The opinion of the Court was drawn up by

SHEPLEY J. — The plaintiff by this bill seeks to redeem the premises conveyed in mortgage by Ezekiel Holmes to Ira Thurston by deed bearing date on August 17, 1835. He is a subsequent mortgagee by a conveyance from Holmes made on February 9th, 1836. His deed was recorded before that made to Thurston, which was assigned to the defendants by a deed bearing date on August 13th, 1839; but he had knowledge of that prior conveyance and does not attempt to postpone its operation to his own.

If the plaintiff is entitled to redeem, the counsel for the defendants does not contend, that he cannot sustain his bill according to the provisions of the Revised Statutes, and it will not be necessary to consider that question.

*His right to redeem is first to be considered.*

The mortgager made and presented to the mortgagee a paper in the words following: — " Winthrop, Oct. 21, 1837. I hereby give possession to the Rev. Ira Thurston of a certain lot of land situated in Winthrop village, bounded as follows, north by land owned by Samuel Morrill, Jr. east by Morton street, south and west by the burying ground, together with the buildings thereon; said lot is the same which I purchased of said Thurston, and is secured to him by mortgage thereon." Signed, Ezekiel Holmes. The mortgagee states, that he never entered into possession or took any action by virtue of that paper, which was delivered by him to the defendants at the time when the assignment was made to them.

The statute then in force provided for the redemption of estates conveyed in mortgage within three years after the mortgagee, or his assignee, should " lawfully enter and obtain the actual possession of such lands or tenements for condition broken."

The entry might be made by process of law; by the consent in writing of the mortgager or those claiming under him; or by the mortgagee's taking peaceable and open possession of the premises in the presence of two witnesses.

A foreclosure could not be made according to the second mode without an actual entry into possession for condition broken, by the consent in writing of the mortgager or those claiming under him.

In this case no such actual entry has been proved. On the contrary it appears, that none was made. The words contained in the paper signed by the mortgager, " I hereby give possession," do not prove the fact, that an actual entry was made and possession obtained. If, as contended in argument, it was the intention of the parties to admit that an actual possession had been taken, they could not cause a foreclosure in a manner not authorized by the statute. Could not substitute a fiction for the actual entry into possession required by the statute and make it as effectual as the act required. The legal effect of that paper, at most, could be no more than to express the consent required by the statute. It may be doubtful, whether it was sufficient for that purpose, for it does not in terms express a consent that possession should be taken for condition broken. The mortgager himself would not be estopped by it to deny, that actual possession had been taken for such a purpose, does not recite or declare, any such fact. Much less could the rights of a subsequent mortgagee be affected by it. It is the actual entry into possession for condition broken, that may effect in due time a foreclosure, being made by the written consent of the mortgager or his assignee. The written consent is of no effect but to make such entry lawful.

There being no proof of a legal foreclosure of the mortgage, the plaintiff is entitled to redeem.

His counsel contends that he should not be required to pay a greater sum, than the defendants paid to procure the indorsement of the note secured by the mortgage and interest thereon. Although that and the assignment of the mortgage

may have been obtained by the payment of a sum less than the amount then actually due, the defendants thereby became the legal owners of the estate subject to the right of redemption, and thus entitled to retain it, until they were paid the full amount secured by the mortgage and remaining unpaid.

The plaintiff's right to recover costs depends upon the provisions of the statute, c. 125, § 16. It was the design of that statute to enable one in certain cases to maintain such a bill without performance or tender of it, but not to authorize him to recover costs, unless he had been prevented from doing it by some act of the mortgagee or his assignee. The mere denial of his right to redeem cannot prevent him from tendering performance.

The bill sets forth a written request to render an account, and alleges an unreasonable neglect or refusal.

The answers admit that such a request was made, and that no account was presented in obedience to it. But they allege that at a previous hour of the same day, one of the defendants exhibited to the plaintiff the amount due upon the note remaining unpaid, and secured by the mortgage, and informed him that there were no claims for repairs or expenditures, and that no rents or profits had been received. To an inquiry of the plaintiff, whether he had not better take the amount due upon that note and let him have the property, the answer was, that he thought he should be willing, that some suitable person should say, taking into consideration all the property and the demands of both the parties, what would be right and just. The design of the statute being to afford to a party seeking to redeem, information of the exact amount claimed to be due upon the mortgage, any failure to afford it within a reasonable time after request, must be regarded in the sense of the statute, as an unreasonable neglect or refusal. The information respecting the amount due upon the note secured by the mortgage, accompanied as it appears to have been at all times by the assertion of other claims to be adjusted before his right to redeem could be admitted, left it obscure and uncertain, whether those other claims were not insisted upon as necessary

to be paid by one entitled to redeem. Under such ¸circum-stances the plaintiff, to remove all uncertainty and obscurity, might properly make the formal request set forth, and a neglect to answer it and to remove all uncertainty must be regarded as unreasonable.

The plaintiff is entitled to a decree for a release of the mortgage title upon payment of the amount secured by it, which remains unpaid, and to recover his costs.